## CITY OF TEAGUE v. RADFORD.

No. 1696—6209.

Commission of Appeals of Texas, Section A.
Oct. 4, 1933.

A. B. Geppert and Lex Smith, both of Teague, and Crate Dalton and T. M. Dalton, both of Dallas, for plaintiff in error.

C. H. Machen, of Dallas, and L. W. Shepperd and B. D. Shepperd, both of Groesbeck, for defendant in error.

CRITZ, Judge.

This suit was instituted in the district court of Freestone county, Tex., by R. G. Radford, against the city of Teague, a municipal corporation, organized under the General Laws of this state, to recover damages for personal injuries received by Radford while employed by the city as the superintendent of its municipal waterworks. Radford alleges that he was personally injured by the bursting of an air compressor, which was a part of the machinery of the waterworks plant. Trial in the district court resulted in a judgment for Radford in the sum of $5,400. This judgment was affirmed by the Court of Civil Appeals. 45 S.W.(2d) 430. The city brings error.

The case was submitted to a jury on special issues in the district court, and in response to such issues the jury found that the city was guilty of negligence in the following particulars:

(1) In furnishing Radford with a defective air compressor with which to work.

(2) In failing to furnish Radford with a reasonable safe place to work.

(3) In instructing Radford to use an excessive quantity of lubricating oil in the operation of the air compressor in question.

(4) In instructing Radford to oil the valves of the air compressor in question.

(5) In furnishing Radford with the kind and quantity of lubricating oil to use with such air compressor that was unsuitable therefor.

The jury found that Radford's injuries were the proximate result of the above acts of negligence, and that his damages amounted to $5,400.

In addition to the above the jury further found:

(a) That Radford was not guilty of contributory negligence in using or in the manner in which he operated this air compressor;

(b) That Radford did not assume the risk incident to the use of the air compressor in question.

In response to certain special issues re-quested by the city and given by the trial court, the jury further found:

(a) That it was the duty of Radford to keep the air compressor in question here in a reasonably safe condition, and that he was guilty of negligence in failing to do so;

(b) That Radford did not know, and by reason of his employment as an experienced waterworks superintendent should not have known, that the use of an excessive amount of oil might cause said air compressor to explode;

(c) That the air compressor in question exploded because it was defective.

As already shown, the trial court entered judgment for Radford against the city on the above verdict for $5,400.

We shall not attempt to make a statement of the pleadings, but will treat them as sufficient on both sides to justify the submission of the issues indicated by the above findings.

The city presents this case in this court by various assignments, but we consider it only necessary to consider those which in effect contend that the finding of the jury that it was Radford's duty to keep the air compressor here in a reasonably safe condition, when considered in the light of the balance of the record, shows that he assumed the risk incident to its operation and therefore precludes his right to recover.

In connection with the above, we here pause to state that we think there is a direct conflict between the jury finding that Radford was not guilty of contributory negligence in the manner in which he operated this air compressor, and the findings that it was Radford's duty to keep this air compressor in a reasonably safe condition, and that he was guilty of negligence in failing to do so; but the question of a conflicting verdict is not directly presented in the application for the writ.

It is the settled law that an employee or servant cannot recover for damages or injuries which arise from defects in a thing, for the safe condition of which such employee is himself responsible. This rule applies with the same force to a case where the employee undertakes, with the master, to see to the safety of the premises where or the appliances with which he works, that it does to a case where such employee undertakes to construct or prepare the place or appliances himself. Also the rule applies to cases where reasonably safe appliances are furnished by the master, and the servant undertakes to select from them, and to use them at his own will. Thompson on Negligence, vol. 5, par. 4616.

It is further the rule that an employee assumes the risk of injury by machinery or

mechanical devices which he is employed to repair or keep in a safe condition or which it is his duty to repair or keep in a safe condition in the course of his employment. Id., par. 417; Watson v. Houston & T. C. Ry. Co., 58 Tex. 434; McNiff v. Texas Midland R. R., 26 Tex. Civ. App. 558, 64 S. W. 1010 (writ ref.); Broderick v. St. Paul City Ry. Co., 74 Minn. 163, 77 N. W. 28; Drum v. New England Cotton Yarn Co., 180 Mass. 113, 61 N. E. 812; Allen v. G. W. & F. Smith Iron Co., 160 Mass. 557, 36 N. E. 581. These authorities might be multiplied many times, but we consider them sufficient to show the correctness of the rule we have announced.

■ Finally, it is the rule that a servant or employee who is vested by his master with general superintendence and control of the master's work or business, or of any distinct and separate department thereof, with discretionary power in the conduct of it, will be deemed in law a vice principal of the master, and not a fellow servant of those working under him with respect to any duty growing out of such superintendence. Thompson on Negligence, vol. 4, par. 4946.

■ Now bearing in mind the foregoing rules, let us determine from this record if Radford can recover for the personal injuries received by him on account of the explosion of the air compressor here involved, when such explosion occurred at a time when, as found by the jury, it was Radford's duty to keep such compressor in a reasonably safe condition, and when he negligently failed to do so.

The first act of negligence found against the city is that it negligently furnished Radford with a defective machine with which to work. In this regard the uncontroverted evidence shows that this air compressor was of a standard make, in general use throughout the country, and was new when installed. It follows that the city certainly was not guilty of negligence in its selection.

The evidence shows that this machine gave trouble at times, from the time it was installed to the time it exploded. On the other hand, the evidence and verdict show that it was Radford's duty to keep it in a safe condition. Furthermore, the evidence shows that Radford was the city's waterworks superintendent in charge of the operation of this machine for the fifteen months it was in use, with a better opportunity than any one else connected with or employed by the city to know its condition, and there is no showing that he ever objected to its use or notified the city or any of its officers that it was dangerous to operate. Furthermore, he never at any time objected to its retention as a part of the machinery of the plant and never at any time or in any way objected to

discharging his duty to operate it and keep it in safe condition. Under such a record we think he assumed, as a matter of law, the risks incident to the operation of this machine in so far as any question of its being defective is concerned.

■■ The finding that the city was guilty of negligence in failing to furnish Radford with a safe place to work is based on proof that the house in which this air compressor was contained was of brick walls with steel rafters, across which was laid pyro bars three inches thick. These bars were from one-half to three-fourths as heavy as concrete. They were laid across the rafters but not fastened thereto. Clay tiles of the weight of ordinary brick were laid on top of such bars and fastened thereto with one nail each. The force of the explosion of the air compressor lifted this roof up, and when it fell back the material thereof broke and came through and on Radford and injured him. We think the evidence shows that this roof was of approved material and construction as a roof, and that the city was not guilty of negligence in this respect. It is hardly to be presumed that it was the duty of the city to maintain a roof that would withstand the force of this explosion. Of course, if the roof was caused to fall on Radford by the explosion, and he was thus injured, and the city was responsible for the explosion, it would be responsible for the injuries resulting from the falling roof, and that regardless of its kind or character.

■ The finding that the city was guilty of negligence in instructing Radford to use an excessive quantity of lubricating oil is based on evidence to the effect that he used the amount of oil he was instructed to use by Mr. Hunter, who installed the air compressor as the servant and agent of the concern who sold it to the city. In this connection Radford testified that he had been instructed by Mr. St. Clair, the city manager of the city of Teague, to follow Mr. Hunter's instructions in this respect. The evidence shows that Hunter had not been connected in any manner with the operation of this machine or with the city waterworks for more than five months at the time of this explosion. The machine had been in operation fifteen months at the time of the explosion, and during the last five months of such time Radford was in sole charge of the city's waterworks as its superintendent, charged with the duty of operating the machinery thereof and keeping the same in a safe condition. It was also shown that a new machine of this kind requires more oil than it does after it has been operated or run for a time. Certainly an instruction of this kind to Radford, given under the circumstances above shown, would

not relieve him of his responsibility in the use of oil in or on this machine five months after Hunter had gone, and a time when he (Radford) was responsible to the city, and charged with the duty of keeping this machine in a safe condition. In this connection we think the duty to keep the machine in a safe condition, under all of the facts of this record, carried with it the duty to oil it and determine the quantity of oil to be used.

Finally, in connection with the above we do not think there is any legal evidence in this record showing, or tending to show, that Radford was under any legal obligation to take instructions from St. Clair as to how to operate this machine. Radford was employed by the city governing board to superintend its waterworks. The jury finds that he was charged with the duty of keeping this air compressor in a safe condition. St. Clair was the city clerk. It may be that the city governing board required of St. Clair some duties not ordinarily exercised by city clerks, but we do not think it is shown by probative evidence that he had any authority to instruct Radford how to operate the machinery of the city's waterworks. In this connection the evidence shows that Radford was employed by the city as an expert, while St. Clair had no expert knowledge along such lines, and Radford knew it.

What has already been said practically disposes of the findings to the effect that the city was guilty of negligence in instructing Radford to oil the valves of this machine, and in the kind and quantity of lubricating oil furnished to Radford by the city for use therein. In this connection we think the duty imposed on Radford to keep this machine in a safe condition, as a matter of law, carried with it the duty to determine if its valves should be ground. Furthermore, if there is any evidence to the effect that the city negligently furnished Radford with a kind and quantity of lubricating oil not suited for this machine, such evidence is not pointed out to us by appellee.

For the reasons stated we recommend that the judgments of the Court of Civil Appeals and district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.